AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
_____ District of _____

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)* | )<br>)<br>)  Case No. 21-sw-00596-JMC<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
 ❒ evidence of a crime;
 ❒ contraband, fruits of crime, or other items illegally possessed;
 ❒ property designed for use, intended for use, or used in committing a crime;
 ❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section*                                                *Offense Description*

The application is based on these facts:

 ❒ Continued on the attached sheet.
 ❒ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

_____
*Printed name and title*

Sworn to before me and signed by reliable electronic means.

Date: _____         *James M. Candelaria*
                               _____
                               *Judge's signature*

City and state: _____         _____
                                         *Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Sean Sloan, being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

## INTRODUCTION AND AGENT BACKROUND

1. I am a Task Force Officer (TFO), for the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA). Your affiant has 18 years of total law enforcement experience in the State of Colorado, twelve of those years as a Department of Homeland Security (HSI) Task Force Officer and two of those years as a DEA Task Force Officer. During the course of my career, I have received training and conducted investigations involving physical surveillance, executed court authorized orders, and used other investigative techniques to secure relevant information in support of criminal investigations. Your affiant has personally investigated narcotics, human trafficking, human smuggling, and exploitation cases.

2. This affidavit is submitted in support of an application for a search warrant for a black in color, Apple brand cell phone ("The Device" or "SUBJECT ELECTRONIC DEVICE") (more fully described in Attachment A), and the data located therein, there being probable cause to believe that located in/on the property described in Attachment A are items described in Attachment B, being evidence, fruits, and instrumentalities of violations of 21 U.S.C. Sections 841(a)(1) and (b)(1)(B)(i) (*Possession with Intent to Distribute More than 100 grams of a Heroin Mixture*); and, 21 U.S.C. Sections 841(a)(1) and (b)(1)(C) (*Possession with Intent to Distribute Heroin*).

3. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the above mentioned violation in paragraph two are located in/on the property described in Attachment A.

4. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

## IDENTIFICATION OF THE SUBJECT ELECTRONIC DEVICE TO BE EXAMINED

5. The Device to be searched is a black in color, Apple iPhone Model 11, bearing numbers of: IMEI# 352908117562296, held in evidence at the DEA Office in Colorado Springs Field Office, located at 5755 Mark Dabling Blvd, Suite 280, Colorado Springs, Colorado.

6. The Device is currently in the lawful possession of the DEA. It came into the DEA's possession in the following way: the device was seized incident to Gary QUINTANA's arrest on Wednesday, April 28, 2021 pursuant to a probable cause arrest.

7. In my training and experience, I know that the Device has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the DEA's possession.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

8. Based on my training and experience, your Affiant knows about the following items:

9. A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet including websites, social media sites, bulletin boards, file sharing, and other Internet sites. Wireless telephones often have a subscriber identity module or subscriber identification module ("SIM"), which is an integrated circuit that securely stores the International Mobile Subscriber Identity ("IMSI") and the related key used to identify and authenticate subscribers on mobile telephone devices.  A SIM is embedded into a removable "SIM card," which can be transferred between different mobile devices.  A SIM card contains a unique serial number ("ICCID"), IMSI, security authentication and ciphering information, temporary information related to the local network, a list of the services to which the user has access, and certain passwords.  Most SIM cards will also store certain usage data, such as call history, text ("SMS") messages, and phone book contacts.  Wireless telephones may also be "smartphones," such that they operate as personal computers capable of accessing the Internet.  They may also include GPS technology for determining the location of the device.  Such telephones may also contain removable storage media, such as a flash card—such devices can store any digital data and can have the capacity to store many gigabytes of data.  Some cellular telephones also have software, giving them the same capabilities as personal computers including accessing and editing word processing documents, spreadsheets, and presentations.  Some cellular telephones also operate as a "tablet," or mobile computer, and can contain software programs called applications.  Those programs can perform different functions and save data associated with those functions, including use associated with the Internet.

10. Computers and digital storage devices can include all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including mobile phones, and also includes any physical object upon which computer data can be recorded such as hard disk drives, RAM, floppy disks, flash memory, CDs, DVDs, and other magnetic or optical media.

11. Based on my knowledge, training, and experience, your Affiant knows that computers and digital storage devices can store information for long periods of time.  Similarly, things that have been searched for and viewed via the Internet are typically stored for some period of time on a device.  This information can sometimes be recovered with forensic tools.

12. Based on my knowledge, training, and experience, examining data stored on cellular telephones and digital storage devices can uncover, among other things, evidence that reveals or suggests who possessed or used the cellphone, computer or digital storage devices.

13. There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

    - Based on my knowledge, training, and experience, I know that digital files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a digital storage device or computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    - Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    - Wholly apart from user-generated files, computer storage media including digital storage devices and computers' internal hard drives can contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

    - Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."  Forensic review may also disclose when and by whom the Internet was used to conduct searches, view material, and communicate with others via the Internet.

14. *Forensic evidence*.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information on the Device that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that

establishes how the Device was used, the purpose of the use, who used the Device, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

- Data on the storage medium can provide evidence of a file that was once on the storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer or device was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created. This information can be recovered months or even years after they have been downloaded onto the storage medium, deleted, or viewed.

- Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

15. A person with appropriate familiarity with how a digital storage device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

16. The process of identifying the exact electronically stored information on storage media that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer or digital storage device and the application of knowledge about how a computer or digital storage device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

17. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

18. Your Affiant knows that when an individual uses an electronic device to aid in the commission of a crime, particularly drug trafficking, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: forensic analysis of the devices will show saved communications providing instructions to the drug courier, names, telephone numbers, e mail addresses,

photographs, social media accounts and messages of co-conspirators. Additionally, these devices may contain financial account information, financial logbooks, and browser histories.  In your affiant's experience, drug couriers make multiple trips. A search of the devices may also provide information on travel history through hotel reservations confirmation e-mails and route searches through websites such as Google Maps.

19. Your Affiant also knows that those who engage in criminal activity will attempt to conceal evidence of the activity by hiding files, by renaming the format, (such as saving a .pdf image file as a .doc document file) or by giving them deceptive names such that it is necessary to view the contents of each file to determine what it contains.

20. *Need to review evidence over time and to maintain entirety of evidence.*  Your Affiant recognizes the prudence requisite in reviewing and preserving in its original form only such records applicable to the violations of law described in this Affidavit and in Attachment B in order to prevent unnecessary invasion of privacy and overbroad searches. Your Affiant advises it would be impractical and infeasible for the Government to review the mirrored images of digital devices that are copied as a result of a search warrant issued pursuant to this Application during a single analysis.  Your Affiant has learned through practical experience that various pieces of evidence retrieved from digital devices in investigations of this sort often have unknown probative value and linkage to other pieces of evidence in the investigation until they are considered within the fluid, active, and ongoing investigation of the whole as it develops.  In other words, the weight of each individual piece of the data fluctuates based upon additional investigative measures undertaken, other documents under review and incorporation of evidence into a consolidated whole.  Analysis is content-relational, and the importance of any associated data may grow whenever further analysis is performed. The full scope and meaning of the whole of the data is lost if each piece is observed individually, and not in sum. Due to the interrelation and correlation between pieces of an investigation as that investigation continues, looking at one piece of information may lose its full evidentiary value if it is related to another piece of information, yet its complement is not preserved along with the original.  In the past, your Affiant has reviewed activity and data on digital devices pursuant to search warrants in the course of ongoing criminal investigations.  Your affiant has learned from that experience, as well as other investigative efforts, that multiple reviews of the data at different times is necessary to understand the full value of the information contained therein, and to determine whether it is within the scope of the items sought in Attachment B.  In order to obtain the full picture and meaning of the data from the information sought in Attachments A and B of this application, the Government would need to maintain access to all of the resultant data, as the completeness and potential of probative value of the data must be assessed within the full scope of the investigation.  As such, your Affiant respectfully requests the ability to maintain the whole of the data obtained as a result of the search warrant, and to maintain and to review the data in the control and custody of the Government and law enforcement at times deemed necessary during the investigation, rather than minimize the content to certain communications deemed important at one time.  As with all evidence, the Government will maintain the evidence and mirror images of the evidence in its custody and control, without alteration, amendment, or access by persons unrelated to the investigation.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, copying, and reviewing the contents of the Device consistent with the warrant. The warrant I am applying for would authorize a later examination and perhaps repeated review of the Device or information from a copy of the Subject Electronic Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Subject Electronic Device to human inspection in order to determine whether it is evidence described by the warrant.

## INVESTIGATION

22. On April 13, 2021, at approximately 7:00 p.m., multiple law enforcement agencies conducted surveillance at 903 11th Street, City of Alamosa, County of Alamosa, State of Colorado, District of Colorado ("the residence"). This residence was known to law enforcement as a primary residence for Gary Lee Michael QUINTANA (D.O.B 09/05/1977), who is a known drug distributor in Alamosa, Colorado. Surveillance was conducted on this residence based upon information obtained by the Alamosa Police Department and ATF. The surveillance is in relation to a homicide investigation of Korina Arroyo, date of birth, 08/30/1989, where numerous statements were made that a person named Roger REYES was involved in her homicide. Law enforcement was aware that REYES would travel to the residence to obtain drugs from QUINTANA.

23. At approximately 7:00 p.m. on April 13, 2021, whole conducting surveillance, law enforcement observed REYES arrive at the residence in a gray in color Jeep bearing Colorado license plate BLC-E01 registered to REYES. REYES exited the Jeep and entered the residence. After being inside for a period of time, law enforcement observed REYES exit the residence and enter the Jeep and begin to drive away. Law enforcement followed the Jeep from a distance and observed I pull up to another house known to law enforcement as a house where narcotics were distributed and sold. Law enforcement observed REYES leave this house a short time later.

24. On April 27, 2021, at approximately 6:45pm, while conducting surveillance, law enforcement observed REYES arrive at QUINTANA's residence in a black Chevrolet Malibu bearing a Colorado license plate of CHZ-353. The black Malibu was registered to REYES. Law enforcement observed REYES exit the Malibu and entered the residence. A short time after arrival, law enforcement observed REYES looking out the front door of the residence on numerous occasions. Your affiant believed, based on training and experience in similar situations, that REYES was looking for the presence of law enforcement in the area.

25. At approximately 7:57 pm, agents observed REYES walk to the door of the residence with QUINTANA, and shortly after exit the residence. Law enforcement observed REYES' left hand inside his front pocket as he approached the black Malibu that was parked in the street in front of the residence. Agents observed REYES get into the drivers' seat of the black Malibu and immediately depart the area of the residence. Agents observed that

REYES was the sole occupant of the vehicle as it departed the residence.

26. Law enforcement surveillance units maintained constant visual contact of the black Malibu upon leaving the residence to the initiation of the traffic stop by Colorado State Patrol near the intersection of W. 7th St and Tremont St. in Alamosa, Colorado.

27. At approximately 8:03pm, a traffic stop of the black Malibu was conducted by Colorado State Patrol (CSP). CSP Trooper Bradley Spargur, observed a black Chevrolet Malibu, bearing Colorado license plate of CHZ-353, traveling west bound on West 7th Street, Alamosa Colorado. Trooper Spragur observed the vehicle had very dark window tint on all windows to include about six (6) inches of dark tint on the front windshield. Trooper Spragur also observed the black Malibu drift onto/over the fog line and quickly adjust. Trooper Spargur initiated a traffic stop at the intersection of Washington Avenue and Tremont Street., in Alamosa, Colorado.

28. Upon contact, the sole occupant of the black Malibu was positively identified as Roger REYES, DOB 09/05/1982. REYES was advised of the observed traffic violations and asked to step out of the vehicle. Troopers were unable to see into the vehicle due to the dark window tint. After a window tint test was conducted by Troopers, the window tint was deemed to be illegal. Trooper Spargur asked for consent of REYES' to perform a pat-down of REYES' person for officer safety. REYES faced away from Trooper Spargur and raised his arms voluntarily. Trooper Spargur conducted a pat-down of REYES.

29. Trooper Spargur discovered a bulge in REYES front right pocket. Trooper Spargur asked REYES about the bulge in his front right pocket. REYES reached into his pocket and retrieved a baggy containing a brown substance that was believed to be heroin based on Trooper Spargur's training and experience. The substance was later field tested with a presumptive positive for the presence of heroin. Trooper Spargur placed REYES in hand restraints. A further search of REYES revealed another baggy of a brown powdery substance, which later tested positive for the presence of heroin. The total weight of the two (2) suspected baggies of suspected heroin was approximately 123.05 grams. REYES was also in possession of approximately $7,100.00 in cash, which was located in a wallet on REYES' person.

30. During the search incident to his arrest, law enforcement found a mobile device in REYES' possession: a black in color, Apple iPhone Model 11, with IMEI# 352908117562296 stamped on the SIM card tray of the device.

31. REYES was transported to the Alamosa County Jail for booking and housing.

## QUINTANA's ARREST

32. On April 28, 2021, at approximately 1:00 am, a District Court Judge for the 12th Judicial District of Colorado signed a warrant authorizing the search of the residence located at 903 11 Street, Alamosa, Colorado, which is located within the District of Colorado. The search included all out- buildings and vehicles located on the property.

33. On April 28, 2021, at approximately 8:05am, agents observed QUINTANA depart the residence, operating a white Mercedes-Benz Sprinter van, which was registered to QUINTANA. Approximately 10 minutes later, the white van was stopped by a CSP Trooper a few blocks away from the residence for failing to stop at a stop sign.  Inside the Sprinter van was Quintana and two other individuals.  QUINTANA was subsequently placed under arrest due to the large amount of drugs that were later discovered in his residence, as will be further detailed. QUINTANA was transported to the Alamosa County Jail.

34. On April 28, 2021, at approximately 8:15am, Alamosa Police Department SWAT members executed the search warrant at 903 11th Street, Alamosa, Colorado. During the execution of the search warrant, officers encountered Pamela Espinoza, who was the only occupant at the residence. Espinoza later told agents that she lives in Antonito, Colorado but owns the residence at 903 11th Street. She claimed that she is the common-law wife of QUINTANA and that she had arrived at the residence earlier that morning. Two vehicles registered to QUINTANA were parked on the side of residence when SWAT officers arrived. Espinoza stated that she did not know anything about the drugs in the residence and she also denied ownership of the cash found in the house (discussed below). Espinoza further stated that QUINTANA sleeps in the room where the cash was discovered, but she does not live at the residence. Agents located numerous documents, including car titles, in the name of QUINTANA, in close proximity to the cash.

35. During a search of the residence, agents located approximately 641 gross grams of suspected heroin, 254.6 gross grams of suspected cocaine, and 200.5 gross grams of suspected methamphetamine, in the kitchen area of the residence. Most of the drugs were located in a yellow "DeWalt" tool bag that also contained a digital scale. All of the suspected drugs were later field tested and tested positive for their respective suspected drugs. During the search, agents located what appeared to be over $20,000 of cash in a purple Crown Royale bag in a dresser that was located in the master bedroom of the residence. The cash was bundled using rubber bands in what appeared to be set denominations.  Based upon my training and experience, the cash was bundled in a manner consistent with drug trafficking proceeds.

## QUINTANA & REYES TELEPHONE RECORDS

36. A search of law enforcement databases showed a known telephone number for Roger REYES is 720-980-4551.  These same databases showed that phone number 720-980-4551 received service through T-Mobile USA.  Law enforcement subpoenaed documents from T-Mobile USA related to phone number 720-980-4551.  These documents listed the subscriber as Valen Reyes, 381 S. Ames Street, Apartment B206, Lakewood, CO, 80226. It should be noted that as of the writing of this affidavit investigators do not know the relationship of Roger REYES to Valen REYES.  Phone toll records received from T-Mobile USA also showed that phone number 720-980-4551 was associated to IMEI number with the first fourteen digits of "35290811756229".  NOTE: your investigator is aware, after speaking to other law enforcement and representatives from mobile data carriers that the

first fourteen digits of an IMEI number remain static based on the hardware of the associated device, and the final digit changes when a device receives a software update.

37. A search of law enforcement indices showed a known telephone number for Gary QUINTANA is 719-580-0522.

38. On May 24, 2021, your affiant received call detail records from T-Mobile in reference to historical call records belonging to phone number 720-980-4551. Your affiant specifically reviewed calls relating to April 27, 2021, the day Roger REYES was arrested leaving the residence of Gary QUINTANA with over 120 grams of a heroin mixture. The following call records showed:

    a) April 27, 2021, 3:54 P.M. MDT, Phone number 720-980-4551 (REYES) called 719-580-0522 (QUINTANA) with no answer.

    b) April 27, 2021, 3:54 P.M. MDT, Phone number 720-980-4551 (REYES) called 719-580-0522 (QUINTANA) with no answer.

    c) April 27, 2021, 4:30 P.M. MDT, Phone number 720-980-4551 (REYES) called 719-580-0522 (QUINTANA) with no answer.

    d) April 27, 2021, 5:05 P.M. MDT, Phone number 720-980-4551 (REYES) called 719-580-0522 (QUINTANA) which resulted in a 23 second phone call.

    e) April 27, 2021, 5:49 P.M. MDT, Phone number 719-580-0522 (QUINTANA) called 720-980-4551 (REYES) which resulted in a 13 second phone call.

39. Complete phone toll records from T-Mobile for phone number 720-980-4551 showed that phone number 719-580-0522 (QUINTANA) had been in contact with phone number 720-980-4551 (REYES) a total of 251 times from a time period of January 30, 2021 to April 28, 2020.

## **CONCLUSION**

40. Through training and experience, your Affiant is aware that drug traffickers communicate with criminal associates, other drug dealers and customers with cellular phones. Your Affiant is also aware the cellular phone communications include text messages and photographs.

41. Based on the investigation described above, probable cause exists to believe that inside the Subject Electronic Device (described on Attachment A), will be found evidence, fruits, and instrumentalities of violations stated in paragraph two of this affidavit (described in Attachment B).

42. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the item described in Attachment A for the items listed in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

                                      */s/ Sean Sloan*
                                      DEA Task Force Officer

SUBSCRIBED and SWORN to me by reliable electronic means this 26th day of May 2021.

_____*James M. Candelaria*_____
Hon. Magistrate Judge James M. Candelaria

**Application for search warrant was reviewed and is submitted by Jeffrey K. Graves, Assistant United States Attorney.**

## ATTACHMENT A

### **DESCRIPTION OF PROPERTY TO BE SEARCHED**

The property to be searched is a black in color, Apple iPhone Model 11, bearing numbers of: IMEI# 352908117562296, held in evidence at the DEA Office in Colorado Springs Field Office, located at 5755 Mark Dabling Blvd, Suite 280, Colorado Springs, Colorado ("SUBJECT ELECTRONIC DEVICE").

This warrant authorizes the forensic examination of the SUBJECT ELECTRONIC DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

Any and all evidence, fruits, and instrumentalities regarding violations of 21 U.S.C. Sections 841(a)(1) and (b)(1)(B)(i) (*Possession with Intent to Distribute More than 100 grams of a Heroin Mixture*); and, 21 U.S.C. Sections 841(a)(1) and (b)(1)(C) (*Possession with Intent to Distribute Heroin*).  In particular:

1. Images or visual depictions, including video, of persons or scenery having any relation to the above-mentioned offenses;

2. Any and all information, documents, records, images, videos, or correspondence, in any format or medium pertaining to the use or ownership of the SUBJECT ELECTRONIC DEVICE;

3. Any and all information, notes, documents, records, or correspondence, in any format or medium, concerning communications about the possession of controlled substances and the and intent to distribute controlled substances;

4. Any and all diaries, notes, address books, names, and lists of names, addresses, and other contact information of individuals who may have been contacted by use of the SUBJECT ELECTRONIC DEVICE or by other means for the purpose of committing violations of the above-mentioned offenses;

5. Stored text messages, with corresponding telephone numbers and names having any relation to the above-mentioned offenses;

6. Stored voice messages recorded on the device having any relation to the above-mentioned offenses;

7. Records of incoming and outgoing calls, with corresponding identifying information having any relation to the above-mentioned offenses;

8. Records of Internet activity, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses having any relation to violations of the above-mentioned offenses;

9. Descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of the above-mentioned offenses;

10. Evidence of who used, owned, or controlled the SUBJECT ELECTRONIC DEVICE to commit or facilitate the commission of the above-mentioned offenses, or at the

      time the things described in this warrant were created, edited, or deleted, including photographs, videos, logs, call logs, phonebooks, address books, contacts, IP addresses, GPS information, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, search terms, metadata, user profiles, e-mail, e-mail contacts, messages (text or voice), instant messaging logs, file structure and correspondence;

11. Evidence of the times, dates, and locations the SUBJECT ELECTRONIC DEVICE was used in relation to violations and possible violations of the above-mentioned offenses;

12. The telephone number, ESN number, serial number, and/or SIM card numbers of or contained in the SUBJECT ELECTRONIC DEVICE;

13. Passwords, encryption keys, and other access devices that may be necessary to access the SUBJECT ELECTRONIC DEVICE; and,

14. Contextual information necessary to understand the evidence described in this attachment.